DOMENGEAUX, Judge.
This is an expropriation suit brought under La.R.S. 48:441 et seq., the quick-taking statute, by the Department of Highways in connection with the expansion of U. S. Highway 167-71 in Rapides Parish.
Defendants, James P. Hoyt, Jr. and his wife, owned a 2.378 acre tract of land fronting on the old U. S. Highway 167-71 between Lecompte and Alexandria. The property was irregularly shaped, resembling an elongated trapezium. The two longer sides ran north to south approximately parallel to the existing highway. The side closest to the highway had highway frontage of about 1800 feet. The shorter sides ran east to west. On its southern boundary, the property had a depth of 145 feet; on the northern boundary, the property had a depth of 40 feet. The southern end of the property contained buildings and improvements related to the Ellis Truck Stop, operated by defendants’ lessee, George Ellis. Under the lease arrangement, Ellis paid $250.00 per month in rent and was supposed to purchase all oil, gasoline, and automotive products from Hoyt’s business, the Hoyt Oil Company, a petroleum products distributor. This resulted in monthly profits to Hoyt of approximately $2,000.00 to $2,500.00.
The land taken constituted 1.068 acres of the northern portion. It was roughly rectangular in shape, having highway frontage of about 1,150 feet, but a depth of only 40 feet. Although included in the lease arrangement, the portion taken did not include any buildings or 'structures. The only improvements existing on this section was a portion of a gravel driveway used as a deacceleration lane by vehicles approaching the truck stop and, possibly, for the temporary parking of home trailers in transit.
The property remaining after the taking consisted of 1.31 acres with highway frontage of about 650 feet. The depth of the remaining property on the southern side was unchanged at 145 feet; on the northern side it was 40 feet deep. The remaining tract contained all of the buildings and structures related to the truck stop.
The expropriation was necessitated by the Highway Department’s plan to convert the existing two-lane highway into a four-lane thoroughfare. This was to be accomplished by constructing an additional two-lane route for northbound traffic to the east of the existing highway. The existing highway was to be used exclusively for southbound traffic. In the area of the Hoyt property, the north- and southbound lanes were to be separated by a rather large tract of land, which was to remain in private ownership.
The taking occurred on February 13, 1973, and, pursuant to La.R.S. 48:441, et seq., the Highway Department deposited the sum of $855.00 for the property into the registry of the Court. An order of expropriation was signed.
After the taking, the matter was tried, and the trial court awarded an increase in the value of the part taken from $855.00 to $2,068.00. The Court further awarded ex *1192 pert witness fees of $600.00 for each of defendants’ experts plus $150.00 per day for court testimony. The trial court denied defendants’ claim for severance damages to the remaining property. A new trial was granted on defendants’ motion for the purpose of increasing the expert witness fees. The judgment was amended to increase these fees to $1,500.00 for each of defendants’ expert witnesses. Defendants have perfected a devolutive appeal. The Department of Highways has answered the appeal contending that the amount of expert witness fees is excessive.
The issues presented on appeal are: (1) Whether the amount of compensation awarded for the land is adequate; (2) Whether the trial judge erred in denying severance damages; and (3) Whether the amount fixed for expert witness fees is excessive.
I. AMOUNT OF COMPENSATION
Four appraisers testified at trial, and their reports were admitted into evidence by agreement. The State’s appraisers were M. C. Gehr and Gene N. Cope; the defendants’ appraisers were Hab Monsur and Darrell V. Willet, Sr. All of the appraisers used the comparable sales approach to value the land, and all thought that the highest and best use of the land was highway commercial. Their conclusions as to the value of the property, however, varied widely.
The trial judge accepted the appraisal made by Mr. Cope, who set neither the highest nor the lowest value on the property. Due to the unusual shape of the land, Cope determined that the fairest way to appraise the property would be to consider it as two segments, namely: (1) the usable southerly portion, which contained the truck stop itself as well as an area for reasonable expansion of the business, and (2) the northerly portion, which was completely undeveloped and of limited utility because of its shallow depth. Using comparable sales, Cope determined that the southerly portion of the property, comprising 1.4 acres, was worth $4,500.00 per acre; the northerly portion, comprising 0.978 acres, $1,700.00 per acre. He then found that 0.09 acres of the usable southerly portion was taken and affixed its value at $405.00 (0.09 acres X $4,500.00 per acre). The entire northerly portion was taken and its value was affixed at $1,663.00 (0.978 acres X $1,700.00 per acre). Thus, the total value of the land taken was $2,068.00.
We have reviewed the reports and testimony of all the experts in this case. Although defendants’ experts reached valuations higher than those of plaintiff’s experts, they utilized the front foot method which, considering the extreme shallowness of the subject property in this case, could have led to an unrealistic valuation of the land in question. On the other hand, Cope, who used an acreage approach, took into consideration the varying depths of the entire tract before the taking and designated varying amounts in relation to the depth of the property. We do not feel it was manifestly erroneous for the trial judge to have used the appraisal of Cope in reaching his conclusions as to the amount of compensation due.
II. SEVERANCE DAMAGES
Defendants contend that the trial judge was in error by not awarding severance damages. They argue that their property, which formerly enjoyed the passage of both north- and southbound traffic on U. S. Highway 167-71, will now enjoy only the passage of southbound traffic. They apparently maintain that this will result in a diminution in the value of the remaining property because it will no longer have the same degree of desirability as a truck stop.
The trial judge denied severance damages on two grounds, specifically: (1) a mere diversion of traffic does not give rise to severance damage as a matter of law, and (2) assuming arguendo that such damages could be awarded as a matter of law, defendants did not bear the burden of proof necessary to establish their claim. We disagree with the trial judge.
 Louisiana courts have recognized that when the flow of traffic on an existing *1193 roadway is modified by the imposition of a median divider, the value of land fronting on the roadway may be reduced. Damages for this type of reduction in property value have been allowed against the Department of Highways where a portion of the property has been taken and it is shown that a median divider has limited access to the remaining property. State, Department of Highways v. Strickland, 290 So.2d 714 (La.App. 1st Cir. 1974), application denied, 295 So.2d 177 (La.1974); State, Department of Highways v. Carso, 261 So.2d 682 (La.App. 2nd Cir. 1972); State, Department of Highways v. Bagwell, 255 So.2d 852 (La.App. 2nd Cir. 1971), writ denied, 260 La. 456, 256 So.2d 442 (1972). If damages can be awarded where there is the imposition of a mere median divider, then a fortiori damages can be awarded where traffic travelling in opposite directions on the same highway is separated by property in private ownership.
We feel that the preponderance of evidence in this case shows that the value of the land remaining after the expropriation has been reduced by the highway improvement. We find the following evidence significant. The property was being used to operate a truck stop. Prior to the taking the truck stop was readily visible and had easy access to both north- and southbound lanes. After the taking there will be only limited visibility and access because the northbound lane will be separated by a large section of privately owned land. The truck trade constituted a large portion of the business. Hoyt testified that it was his experience, as a service station owner and supplier, that visibility and accessibility are crucial factors directly related to the success of such an operation. Mr. Ellis, the operator of the truck stop, indicated that he had inquired of several of his customers about their continued patronage and that they had expressed concern with regard to the difficulty of reaching his business. He also testified that the majority of his customers were northbound because southbound truckers did not want large quantities of fuel in their tanks when they reached the weight scale located in New Orleans. The tendency would be to fuel on the return trip after the vehicles were unloaded.
With regard to amount, we have only the opinions of Willet and Monsur, defendants’ appraisers.[1] Willet was the only expert who analyzed severance damages in such a manner as to reach separate figures for those damages attributable to the loss of expansion potential onto the part taken and damages caused by the construction of a new northbound lane separated by private property. We feel that defendants have not proven a reduction in the value of the remaining property due to the loss of expansion potential. Accordingly there can be no damages for this item. However, severance damages are due for the division of north- and southbound lanes and the circuity of travel resulting therefrom. Using the dollar value of damages assigned by Willet, in relation to the value of the remaining property considered as part of the entire tract before the taking, we have determined that the percent decrease in the value of the remainder after the taking is 14.1%. Applying this figure to the dollar value assigned to the remainder after the taking by Cope, whose appraisal report was used by the trial judge, we find severance damages due in the amount of $6,920.98 (14.1% of $49,085.00). See State, Through Department of Highways v. Hoyt, 284 So.2d 763 (La.1973); State, Department of Highways v. Carso, supra; State, Department of Highways v. Schexnaidre, 247 So.2d 670 (La.App. 2nd Cir. 1971); State, Department of Highways v. William T. Burton Industries, Inc., 219 So.2d 837 (La.App. 3rd Cir. 1969), writ refused 254 La. 14, 222 So.2d 67 (1969).
III. EXPERT WITNESS FEES
The trial judge originally awarded expert witness fees in the amount of $600.00 each. A new trial was granted on this issue and judgment was rendered awarding fees in the amount of $1,500.00 *1194 each.. We find that the trial judge was not manifestly erroneous in setting the fees at $1,500.00 each. The fixing of expert witness fees rests mainly within the sound discretion of the trial court. State, Department of Highways v. Smith, 272 So.2d 746 (La.App. 3rd Cir. 1972), writ denied, 272 So.2d 696 (La.1973).
For the above reasons the judgment of the district court is amended to increase the award of the landowners by $6,920.98, together with legal interest until paid. In all other respects, the judgment is affirmed. All costs allowed by law are assessed against the plaintiff-appellee.

AFFIRMED AS AMENDED.

. The Department of Highways told their appraisers not to consider severance damages.