*1053 On Rehearing.
LAND, J.
The first question for consideration is whether the establishment of the first grade in the streets in question entitles plaintiff to recover consequential damages to his property under article 167 of the state Constitution.
In our original opinion a majority of the court answered this question in the affirmative, citing Hickman v. City of Kansas, 120 Mo. 110, 25 S. W. 225, 23 L. R. A. 658, and notes, 41 Am. St. Rep. 684. In that case a county road had been graded and used as such for many years, and residences and stores had been constructed on both sides for a considerable distance. The plaintiff had improved his property with reference to the then existing grade. Subsequently the limits of the city of Kansas City were extended so as to take in the road in front of the plaintiff’s property, and by ordinance the grade was changed and elevated about 3% feet. A street railway was constructed on the new grade and the street filled in, whereby plaintiff was compelled to raise his lot and improvements to conform to the established grade, at a cost of about $1,000.
The case before the court was1 one of the change of grade of a highway already established and graded. The Missouri Supreme Court, however, in its opinion, stated that the rule was the same in that state whether the grade was changed or was the first one established.
In the notes to Hickman v. City of Kansas we find a number of cases holding that damages caused by bringing a street to the first established grade are recoverable, and a few cases that qualify this doctrine by excepting changes which must have been in contemplation of the parties when' the property was taken or dedicated. The jurisprudence on the subject is collated in the notes to Leiper v. Denver (Colo.) 7 L. R. A. (N. S.) 108, where it was held that:
“A municipal corporation is not liable for injury to abutting property by alteration of the-natural surface of a street in bringing it to the first established grade, where the change is not unreasonable or carelessly done, even under a constitutional provision that private property shall not be damaged for public use without compensation.”
Judge Dillon is cited by the Colorado court as holding the same doctrine (see Municipal' Corporations [4th Ed.] vol. 2, § 995b), and the-courts of Georgia and Mississippi are re-ferred to in the opinion as possibly announcing the same rule of law. The editor of Lawyers’ Reports ‘Annotated says:
“An examination of the authorities shows-that they are massed against the position takem by the court in Leiper v. Denver.”
The Colorado court admits that its decision! is contrary to the rule laid down in the majority of the eases.
Further reflection has convinced the writer of this opinion that, quoad the damage to private property, there can be, in law, no difference between the initial grading and the change of the grade of a street. Both are-acts' done in the proper exercise of governmental powers and for a public purpose; but, if injury thereby result to private property,, compensation must be made. In Chicago v. Taylor, 125 U. S. 161, 8 Sup. Ct. 820, 31 L. Ed. 638, it was held that, under the provision in the Illinois Constitution of 1870 that “private property shall not be taken or damaged for public use without compensation,”' a recovery may be had in all cases where private property has sustained a substantial injury from the making and use of an improvement that is public in its character. In that case the city of Chicago was held liable for-the consequential damages to private property arising from the lawful construction of a viaduct in one of its streets. Such a doctrine abolishes the ancient rule of “damnum absque injuria.” Hence we conclude that the-city of Shreveport is responsible for whatever property damage may have resulted to- *1055 the plaintiff from the grading of the two ■streets in question. The measure of damages is the consequential diminution of the market value of plaintiff’s property or improvements by reason of the grading in question. Chicago v. Taylor, 125 U. S. 161, 8 Sup. Ct. 820, 31 L. Ed. 638; Griffin v. Railroad Co., 41 La. Ann. 808, 6 South. 624; McMahon & Perrin v. Railroad Co., 41 La. Ann. 827, 6 South. 640. In the last case the court said:
“There is no warrant for extending the liability one whit beyond this. We are simply to inquire what damage has been occasioned to ■the property; i. e., to its value for rental and .sale.”
The petitioner represents that his “property is well worth $7,500, and that its value has been greatly impaired by reason of said -change of grade in not less than $4,000.” We would infer from the allegations that before the change of grade the property was worth .$11,500. But the plaintiff purchased the property in June, 1905, for $3,000, and subsequently added improvements' to the value of $2,000, making the total cost $5,000. That the property was worth more at the time of the grading is doubtful. The first trial was .before a jury, and resulted in a mistrial. The second trial before the judge resulted in a judgment in favor of the defendant. In the face of the mass of contradictory testimony as to whether the market value of the property was injuriously affected by the grading of the streets1, we may well hesitate to reverse the judgment of the lower court. It is ■evident, however, that plaintiff will be compelled to make changes and alterations in his improvements and premises in order to preserve the same and to conform to the new grade. The cost of such necessary work to the property is a damage which should be •compensated under all the authorities. The estimates differ widely as to what work is necessary to preserve the improvements and make them conform to the new conditions. Two estimates were made — one of $2,240.79, and the other of $450. Our former judgment was for $750. We appreciate the difficulty of an appellate tribunal arriving at any satisfactory conclusion on the questions of fact presented in this record; but, as we have jurisdiction of issues of fact as well as questions of law, we are constrained to decide such issues the best we may in order to avoid interminable litigation. We see no good reason to change our former decree, and it is therefore ordered that the same be reinstated and made the judgment of this court.