290 So.2d 714 (1974)
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS
v.
Dempsey J. STRICKLAND, Jr.
No. 9703.
Court of Appeal of Louisiana, First Circuit.
February 11, 1974.
Rehearing Denied March 18, 1974.
Writs Refused June 7, 1974.
*715 Edwin R. Woodman, Jr., Johnie E. Branch, Jr., Asst. Gen. Counsels, Dept. of Highways, Baton Rouge, for appellant.
Gerard E. Kiefer, Baton Rouge, for appellee.
Before SARTAIN, TUCKER and WATSON, JJ.
PER CURIAM.[*]
This is an expropriation suit filed by the Louisiana Department of Highways under R.S. 48:441 et seq., against Dempsey Strickland, Jr. to acquire 26,443 square feet of land fronting approximately 467' on Greenwell Springs Road, 83' on Sullivan Road, and 141' on the Triple "B" Road. The tract is entirely owned by defendant. It is located approximately 3.8 miles east and north of the intersection of Greenwell Springs Road with Monterrey Boulevard, *716 in East Baton Rouge Parish. The southernmost portion of the tract is improved with a brick veneer residence of good quality, built approximately 18 years ago, with subsequent additions and improvements so that it now contains 10 rooms. The northernmost portion of the tract is improved with a concrete block and brick veneer building constructed about 5 years ago in which defendant conducts his electrical business. After the taking the residence will be 54' from the new right of way line; the commercial building 44' from it. The taking will include approximately two-thirds of the residential lawn and 18 trees. The property is zoned rural. It is more particularly described as follows:
"A certain tract or parcel of land, together with the improvements thereon, and all the rights, ways, privileges, servitudes and advantages thereunto belonging or in anywise appertaining, situated in the Parish of East Baton Rouge, State of Louisiana, in Section 42, Township 6 South, Range 2 East,
"GREENSBURG LAND DISTRICT, shown as Parcel No. 8-10 and outlined in red on a white print of a plat of survey made by Michael L. Magliola, Civil Engineer, dated July 1, 1963, revised, annexed to the above entitled and numbered suit, and being more particularly described, according to said plat of survey as follows:
PARCEL REQUIRED IN FULL OWNERSHIP
PARCEL NO. 8-10:
Commence at the southeasterly corner of defendant's property as the point of beginning; thence proceed North 21 degrees 43 minutes 15 seconds East a distance of 78.71 feet, and corner; thence North 25 degrees 02 minutes 45 seconds East a distance of 474.52 feet; thence North 09 degrees 03 minutes 21 seconds East a distance of 18.90 feet and corner; thence North 66 degrees 41 minutes 28 seconds East a distance of 11.94 feet and corner; thence South 10 degrees 01 minute 51 seconds East a distance of 17.00 feet; thence South 01 degree 49 minutes 50 seconds East a distance of 83.26 feet and corner; thence South 23 degrees 48 minutes 47 seconds West a distance of 267.42 feet; thence South 24 degrees 37 minutes 48 seconds West a distance of 200.00 feet; to the point of beginning.
The above described property is a portion of that acquired by defendant by Act of Sale recorded June 23, 1967, in Conveyance Book 1971 at page 219 of the records of East Baton Rouge Parish, Louisiana.
The purpose of the expropriation will be to widen Greenwell Springs Road from two lanes to four, in the process of which a raised center-line median divider will be constructed to separate traffic proceeding in opposite directions on this much-traveled road. It will have the effect of precluding traffic from entering the commercial portion of the property from the northbound lane.
The Highway Department deposited $5,681.00 as the just estimate for the part taken, with no allowance for severance damage. The trial court awarded a judgment to the defendants in the total sum of $19,239.00 subject to credit for the sum deposited broken down as follows:

 $ 2,268.00 residential land actually taken
 400.00 landscaping loss (trees)
 676.00 driveways taken
 3,627.00 commercial land actually taken
 8,218.00 severance damages to commercial
 land and improvements
 4,050.00 severance damages to residential
 improvements
 19,239.00
 -5,681.00 deposit
 $13,558.00

*717 From this judgment the Louisiana State Department of Highways has appealed, alleging the following grounds of error:
"1. The district court erred in awarding defendant a total amount exceeding the estimates of defendant's own witnesses.
2. The district court erred in dividing defendant's property into residential and commercial areas and then fixing the value of the residential area at $7,500 per acre and the commercial area at $12,000 per acre, for the purpose of awarding just compensation for the part taken.
3. The district court erred in finding `that both appraisers, Lejeune and Williams, have indicated twenty-five percent damages to the commercial building by (1) virtue of loss of parking, (2) limitation of access, * * *, (4) loss of frontage on Sullivan Road.' the record shows that their severance damages were based only on the median divider, which is noncompensable.
4. The district court erred in awarding defendant severance damages allegedly accruing to the `commercial' area from construction of the median divider. In this respect, the district court further erred in not considering the evidence presented by Mr. James D. Major."
In consideration of the first two grounds of alleged error we find that the trial court was erroneous in adopting the appraisals of defendants' expert witnesses and splitting the tract to be expropriated into two separate tracts, appraising them separately according to their use as residential and commercial, respectively. This actual use approach which can best be described as "value to the owner," has been rejected by the Supreme Court in State v. Hayward, 243 La. 1036, 150 So.2d 6 (1963), in favor of the time-honored fair market value approach.
Plaintiff's two appraisers, noting that the tract in question was located in a rural area with scattered commercial and residential usage described it as "multiuse," and appraised the whole tract at $7,500.00 per acre. The trial judge adopted this appraisal for the residential portion of the tract, although defendant's two appraisers used the figures for the residential portion of $3,500.00 and $3,900.00, respectively. The defendant's two appraisers, John Lejeune and Wayne Williams, appraised the commercial portion of the tract at $12,000.00 and $10,890.00, respectively. Averaging together the appraisal figures of defendant's appraisers, we find that Mr. Lejeune appraised the whole tract at $7,750.00 per acre, while Mr. Williams appraised it at $7,365.00 per acre. Neither figure is alarmingly different from the figure of $7,500.00 per acre, used by plaintiff's appraisers, George Platt and Karl Snyder, which we find to be well-supported by their comparables. We, therefore, adopt their figure of $7,500 per acre for the whole tract of 3.338 acres, or 17.2¢ per square foot. Applying this rate to the 26,443 feet taken, we arrive at the figure for the whole portion taken of $4,548.00.
To the above figure plaintiff's appraisers added $400.00 for the value of the trees taken and $676.00 for the nine feet wide concrete driveway also taken, which gives a total for land and improvements of $5,624.00. The inclusion of the trees in the value of the land taken is the method which has always been used in Louisiana, rather than debiting the trees as an item of damage. The primary instance in which trees taken and cut are categorized under the damage classification is where a residential lot has been completely denuded in the process of widening a street. In the instant case there are a number of trees left in defendant's yard, and the effect of a shaded lawn has not been destroyed.
Also we think that the value of the concrete driveway was properly included in the value of the land taken, instead of debiting it as an item of damage.
*718 The most serious problem to be considered in this case is the question of whether or not the defendants will suffer compensable damage by the construction of the median divider, which is being installed under the police power of the state. Three of the four expert witnesses in this case are agreed that the proposed median divider will not limit access to the residence now existing on the property. However, plaintiff's witness Platt has found that the commercial building now situated on the Strickland property will suffer twenty per cent damage due to the limitation of access provided by the median divider. Mr. Platt did not think that traffic bound into Baton Rouge on Greenwell Springs Road would be affected by the median's cutting off the Strickland building's original driveway due to the fact that traffic can still enter the driveway to the residence which ties into the commercial building. Outbound traffic, however, will have to proceed up the Greenwell Springs Road, then turn around and return, or it will have to go to the Sullivan Road, turn around, and return. In any case the median divider would cause severe inconvenience to a person doing business with the Strickland Co., to the extent that he might well drive on elsewhere. Mr. Strickland testified that he built his building with a convenience store image in mind. Defendant's witnesses assessed the damage to the commercial portion of the tract at twenty-five per cent, which the trial judge adopted, "by virtue of the loss of parking, limitation of access,. . . . . . . . . . . . median, and loss of frontage on Sullivan Road." A careful reading of defendant's experts' testimony, however, reveals that they based their estimate of damage primarily on the construction of the median and took no serious position as to any other damage.
The only item of damage which we find substantiated by the evidence is that caused by the proposed median divider which will limit access to the Strickland Building. Although any damage caused by the regulation of traffic under the police power is ordinarily considered damnum absque injuria, the Supreme Court has allowed compensation for it where the damage caused was special to the property and not suffered by all common property owners. In Cerniglia v. City of New Orleans, 234 La. 730, 101 So.2d 218, 221 (1958) the Supreme Court enunciated this principle as follows:
"From a perusal of the cases cited by the district court, and noting the similarity of factual situations with the case under consideration, the conclusion is inescapable that the rules announced in those cases are controlling. For example, in the Patin case5 and again in the 5 Patin v. City of New Orleans, 223 La. 703, 66 So.2d 616.
Thomas & Warner case,6 it was said
6 Thomas & Warner, Inc., v. City of New Orleans, 230 La. 1024, 89 So.2d 885.
that traffic may be directed to a circuitous route, under the City's police power, without liability on the part of the City for resulting damage; and in the second named case, that a plaintiff is entitled to recover nothing because of any change in the situation with respect to parking on public thoroughfares. The rule announced in the Ramelli case,7 a recent
7 Rudolph Ramelli, Inc., v. City of New Orleans, 233 La. 291, 96 So.2d 572.
decision which also presented a similar factual situation, was that inconvenience caused by narrowing of a street and diversion of traffic due to construction of an overpass were disadvantages common to all the other property owners within the same vicinity and not compensable.
On the other hand, the instant case presents elements of damage which, as shown by photographs in the record and supported by the testimony, are not common to all other property owners in a like situation; this is because of the peculiar location of plaintiffs' property with reference to the lowered one-way thoroughfare. . . ."
*719 In Department of Highways v. Bagwell, 255 So.2d 852, 854 (La.App. 2d Cir. 1971), rehearing refused and writs denied., the Court of Appeal had this to say:
"`The police power, unlike the power of eminent domain, is used to regulate; the power of eminent domain being used to acquire property from private ownership.' ([Department of Highways v. Southwestern Electric Power Co., 243 La. 564] 145 So.2d 312, 315, 316)
The Department of Highways is correct when it contends that damages resulting from the diversion of traffic under the police power of the State are damnum absque injuria. Rudolph Ramelli, Inc. v. City of New Orleans, 233 La. 291, 96 So.2d 572 (1957); Patin v. City of New Orleans, 223 La. 703, 66 So.2d 616 (1953). This means that where the state or municipality erects a traffic light or makes a street one-way, the nearby property owners cannot recover damages for the diversion of traffic or other inconvenience. Had the state in this case simply erected a median in Louisville Avenue without more it is probable Bagwel could not recover damages to his property. The state did more than simply erect a median, they took a strip of Bagwell's property to widen Louisville Avenue and erected the median pursuant to the taking. This was not an exercise of the police power but rather an exercise of the power of eminent domain and just compensation is due if the market value of the property has been diminished through the loss of access as well as loss of parking space. Quoting further from Department of Highways v. Southwestern Electric Power Company, supra, the Supreme Court said that:
`* * * * * This constitutional guarantee of compensation for the taking and damaging of private property for public purposes is in no way affected by the fact that the expropriator is exerting police power. * * * * *" (145 So.2d 312, 324)
Thus, in our opinion there is no merit in the Department of Highway's argument that the trial judge erred in awarding damages for loss of access to Bagwell's property.
In State Through Dept. of Highways v. Schexnaidre, La.App., 247 So.2d 670 (2d Cir. 1971) we awarded damages for loss of limited parking as well as want of access from Louisville Avenue. We believe the trial judge was correct in this case in allowing severance damages due to loss of access as well as loss of parking.
. . ."
Under the principles set forth in the two cases quoted supra we find a reasonable basis for awarding severance damages to defendant for the limitation of access which the exercise of the police power of the state in constructing a median divider to regulate traffic, combined with the taking for the widening of Greenwell Springs Road, will cause especially to defendant and to no others. We agree with the trial judge in this finding; however, we reject the amount of his award. The twenty-five (25%) per cent figure proposed by defendant's witnesses was only vaguely supported. We consider that the twenty (20%) per cent figure advanced by plaintiff's witness Platt, to be a better buttressed one. He found no damage to the land surrounding the commercial building; only to the building. Mr. Platt estimated the value of the building, with which figure we agree, as $29,831.00. Using Mr. Platt's percentage rate reflects severance damages to the commercial building of $5,966.00.
We do not concur in the trial judge's finding of severance damages to the residential portion of the tract, as the record does not support a diminution in value of this remainder. Athough defendant's witnesses alleged some diminution of value due to the loss of part of the front lawn, we find the testimony of plaintiff's witnesses more persuasive. Even after the proposed taking, defendant's house will still have 54 feet of front lawn including trees, which will be much larger than the usual *720 set-back of defendant's neighbors on Greenwell Springs Road.
We note ex proprio motu that the judgment of the court a quo awarded interest at the rate of five (5%) per cent per annum from April 13, 1971 until paid. The taking of the property by the plaintiff did not occur until the order of expropriation was signed and filed on April 13, 1972 and the interest should run from that date.
For the foregoing reasons the judgment of the trial court will be amended by reducing the total award to the defendant from the sum of nineteen thousand, two hundred thirty-nine and no/100 ($19,239.00) dollars to the sum of eleven thousand, five hundred ninety and no/100 ($11,590.00) dollars, subject to a credit for the sum of five thousand, six hundred eighty-one and no/100 ($5,681.00) dollars heretofore deposited by the State of Louisiana, with interest at the rate of seven (7%) per cent per annum from April 13, 1972 until paid; in all other respects the judgment of the trial court is affirmed; appellant shall pay those costs of this appeal as are exacted of it by law.
Affirmed as amended and recast.
NOTES
[*] This opinion was authored by TUCKER, J., prior to his death on the 25th day of January, 1974, and is concurred in by the remaining members of the panel.