298 So.2d 94 (1974)
DEPARTMENT OF HIGHWAYS, State of Louisiana
v.
Bennie CAPONE, d/b/a Capone Cleaners.
No. 9880.
Court of Appeal of Louisiana, First Circuit.
June 28, 1974.
Ronald R. Thompson and Robert J. Jones, Asst. Gen. Counsel, Highway Dept., Baton Rouge, for appellant.
Vincent J. Sotile, Donaldsonville, for appellee.
Before LANDRY, ELLIS and PICKETT, JJ.
LANDRY, Judge.
Plaintiff (Department) appeals from judgment awarding Defendant (Owner) *95 damages found by he trial court to result from the improvement of State Highway 3089 (Albert Street) within the municipal limits of the City of Donaldsonville (City). The work consisted of widening Albert Street from two to four lanes, within an existing right of way. The project, which did not involve a taking of any of Owner's property, was designed to afford better access through the City to the new highway bridge crossing the Mississippi River just below the City. We reverse.
During construction a dispute arose between the Department and Owner concerning the width of the right of way dedicated almost 100 years ago for use as Albert Street. The Department instituted action to enjoin Owner's alleged interference with the work, and to compel Owner to remove a sign and canopy erected by Owner on the front of Owner's abutting business establishment. The Department contended the sign and canopy encroached upon the right of way. Owner reconvened for damages. Owner did not, however, appeal from judgment ordering Owner to remove the sign and canopy as an encroachment upon the right of way.
The salient facts are undisputed. In 1940, Owner purchased an unimproved inside lot having a front of 40 feet on the North side of Albert Street. The depth of the lot is not shown with clarity; it appears, however, the lot is between 60 and 120 feet deep. On the property, Owner constructed a building 40 feet in width, fronting Albert Street, thus utilizing the entire width of the property for building purposes. The depth of the building is not established with certainty; we deduce that the building is between 50 and 60 feet deep. The building houses a cleaning and pressing business which Owner has operated continuously to date. The front of the building was located within 2 to 4 inches of Owner's front property line. Across the entire front of his building, Owner constructed a canopy which is approximately 7 feet wide. In addition, Owner erected a sign which extends from the front of the building several feet into the street right of way.
It is conceded that duly recorded, ancient maps dedicate a street right of way (Albert Street) sixty feet in width. It is also acknowledged that subject project does not involve a taking of any portion of Owner's property.
Before subject project was undertaken, Albert Street consisted of two paved lanes of travel, situated in the approximate center of the dedicated right of way. Adjacent to Owner's front property line, a four foot wide sidewalk has been constructed, presumably by the City. Admittedly, the sidewalk is situated entirely within the dedicated street right of way. Between the sidewalk on Owner's side of the street and the two lanes of improved travel, there formerly existed an unimproved area about 15 feet wide. This area was not used for travel purposes; it was locally referred to as a "neutral ground". With the permission and approval of City authorities, Owner paved the "neutral ground" in front of Owner's premises and utilized the space as a parking area to load and unload route trucks, and also as parking space for customers who personally delivered and picked up their clothing.
The new construction will leave the sidewalk intact inside the street right of way. The Department concedes that, when the project is completed, parking will be prohibited in the outside lane nearest Owner's property (the former "neutral ground"). When the additional lanes are constructed, patrons will have access to Owner's front door by means of the sidewalk, but will no longer be permitted to park in front of Owner's establishment. Owner will no longer be permitted to park his route trucks in front of his premises to load and unload. Parking will also be prohibited to vehicles delivering supplies to Owner's premises.
The Department acknowledges that no other vehicular access to Owner's property is possible. As previously noted, Owner *96 does not have a corner lot; no means of ingress and egress exists from the rear because Owner has no connecting property leading to a side street.
Most significantly, for reasons hereinafter enumerated, we point out at this time that the proposed construction will not result in any physical barrier to ingress to or egress from Owner's establishment. The work will consist solely of paving the entire width of the street right of way up to the sidewalk in front of Owner's premises. There will be no overpass, underpass, retaining wall or other similar barrier to block a view of Owner's premises, or to impede or obstruct vehicular passage along and upon the street. The elevation of the street in front of Owner's premises will remain unchanged. The project will provide four lanes of travel instead of two existing lanes. The sole effect of the construction upon Owner's property is to deprive Owner of the privilege of using the former "neutral ground" as parking space. Admittedly, the loss of this parking space will result in serious economic loss to Owner.
Although no portion of his property was taken, Owner maintains he is entitled to damages suffered by virtue of the loss of parking space. Owner so contends on authority of La.Const. Article 1, Section 2, which reads in pertinent part as follows:
"* * * * Except as otherwise provided in this Constitution, private property shall not be taken or damaged except for public purposes and after just and adequate compensation is paid." (Emphasis supplied).
Our jurisprudence is settled to the effect that, even absent an actual taking, damages resulting to property from the construction of public improvements are compensable when such damages are special or peculiar to one's property in particular, and are not general damages sustained by other properties similarly situated. Reymond v. State, Through the Department of Highways, 255 La. 425, 231 So.2d 375, and authorities therein cited.
When there is no taking, damages which merely cause disturbance, inconvenience or discomfort, and which are an ordinary and general result of a public improvement, are not compensable, but are held to be damnum absque injuria. Reymond, above.
In the absence of taking, substantial impairment of ingress, when special and peculiar to claimant's property, entitles an owner to compensation. Efurd v. City of Shreveport, 235 La. 555, 105 So.2d 219; Patin, et al. v. City of New Orleans, et al., 223 La. 703, 66 So.2d 616; Harrison v. Louisiana Highway Commission, 202 La. 345, 11 So.2d 612.
Especially pertinent herein is the rule that damages stemming from changes in parking regulations on public thoroughfares, or diversion of traffic to other streets, are not compensable where such losses result from the exercise of police power by a governmental agency. Cerniglia v. City of New Orleans, 234 La. 730, 101 So.2d 218; Thomas & Warner, Inc. v. City of New Orleans, 230 La. 1024, 89 So.2d 885; Rudolph Ramelli, Inc. v. City of New Orleans, 233 La. 291, 96 So.2d 572.
Griffin v. Shreveport & A. R. Co., 41 La.Ann. 808, 6 So. 624; Harrison v. Louisiana Highway Commission, 202 La. 345, 11 So.2d 612, relied upon by Owner, are factually inapposite. In Griffin, above, defendant railway company constructed elevated embankments upon which railroad tracks were laid. The embankments constituted a continuing physical obstruction of ingress and egress to claimant's property. In Harrison, above, defendant governmental agency constructed a bridge approach on Texas Street in Shreveport, Louisiana, on which street plaintiff's property fronted. The presence of supporting piers within the street right of way left only a narrow portion of the street open to *97 vehicular traffic. The court found that the work seriously impeded vehicular access to plaintiff's property and allowed damages in the amount of diminished value established.
To establish his damages, Owner produced a single expert witness, Calvin Casteigne, Realtor. Casteigne accorded the property a total before construction value of $43,596.00, which he itemized as $12,000.00 for the land and $31,596.00 for improvements. Casteigne considered that the land value would remain the same after the improvements were completed, but the value of the building, as a commercial establishment, would decrease $20,000.00. He attributed the diminution in value to the loss of parking space which would prevent Owner from loading and unloading his route trucks in front of the premises, and also because of the impossibility of access to the establishment from the rear. Casteigne expressed the opinion the only way Owner could remain in the cleaning and pressing business would be by removing about 20 to 25 feet from the front of the building and adding it to the rear. This would provide Owner parking space on his own property. According to Casteigne, this solution would involve moving boilers and other equipment; replacing the canopy and sign and rearranging the entire interior of the establishment. In Casteigne's opinion, the total cost would be $37,302.00. The trial court awarded Owner the cost of Casteigne's proposed restoration. In effect, this amounted to an award of the "cost of cure". In so doing, the trial court erred because, under the circumstances, the damages sustained by Owner are not compensable.
In this instance, construction of the work does not impede, obstruct or impair ingress and egress to Owner's property. Neither does the continued presence of the extra lanes of travel on Albert Street in any way adversely affect Owner's premises. Traffic is not diverted by the extra travel lanes. On the contrary, traffic in front of Owner's premises will be increased considerably when the extra lanes are opened to vehicular travel. The mere presence of the extra travel lanes do not prohibit parking on Albert Street. The sole reason for the parking ban is the Department's exercise of its police power to prohibit parking on a public thoroughfare where good cause for such regulation exists. Even if the street were not widened to four travel lanes, the Department could legitimately impose and enforce a no parking regulation on Albert Street if good cause existed for such use of the Department's police power. Owner does not contend the enforcement of such a regulation is invalid, because of a lack of good cause, in this instance. Owner merely contends that since enforcement of the no parking regulation will damage Owner's property, Owner is entitled to compensation.
We believe it elementary that no person, be he property owner or not, has the absolute, inalienable and unqualified right to utilize a public street for parking purposes. To the contrary, parking on public thoroughfares is a privilege enjoyed by the public at large, subject, of course, to reasonable regulation under proper exercise of the police power.
We find that Owner's loss in this instance results solely and only from a parking ban imposed pursuant to the lawful exercise of the police power of a governmental agency. Such damages are not compensable.
It is ordered, adjudged and decreed that the judgment in favor of defendant, Bennie Capone d/b/a Capone Cleaners, against plaintiff, Department of Highways of the State of Louisiana, in the sum of $37,302.00, be and the same is hereby reversed and set aside and judgment rendered herein in favor of plaintiff, rejecting defendant's reconventional demand; all costs of these proceedings to be paid by Owner.
Reversed and rendered.